# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. SULLIVAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CHEN, *et al.*,<br><br>    Defendants. | Case No. 1:12-cv-01662-AWI-EPG (PC)<br><br>**ORDER OVERRULING DEFENDANTS' OBJECTIONS TO THE DISCOVERY ORDER**<br><br>(ECF No.117) |

    Plaintiff Michael J. Sullivan is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). He is proceeding *pro se* and *in forma pauperis* in this civil rights action, initially filed in 2012, under 42 U.S.C. § 1983. This case now proceeds on Plaintiff's Second Amended Complaint against Defendants Chen, Patel and Marchiano,[1] on claims of deliberate indifference to medical needs in violation of the Eighth Amendment.

    On December 11, 2017, the parties appeared for a scheduling conference before Magistrate Judge Erica P. Grosjean. The following day, the Magistrate Judge issued a discovery order directing each party to "[p]rovide the opposing party with copies of all documents in their possession related to Plaintiff's medical file, care, or medication." (the "Medical Records").

    Defendants Dr. Chen and Dr. Patel now object to the discovery order, contending they should not be required to produce the Medical Records for Plaintiff, nor should they be required to pay the costs associated with copying these documents.

    For the reasons that follow, Defendants' objection is overruled.

## BACKGROUND

    On January 3, 2017, Magistrate Judge Grosjean issued an order requiring initial

---

[1] Defendant Marchiano has not been located for service, and has not yet appeared in this action.

1

disclosures and setting a mandatory scheduling conference in accordance with Fed. R. Civ. P. 16. *See* Doc. No. 78. The order directed the parties to exchange certain categories of information consistent with Rule 26 prior to the mandatory scheduling conference. *Id*. at 2. The order included instructions for the parties to be prepared to informally discuss "[t]he location of potentially relevant documents." *Id*. at 3. Additionally, the order directed the parties to file a scheduling conference statement addressing both the issues listed in the order and any other issues the parties believed would assist in the scheduling of the case. *Id*.

On April 24, 2017, Defendants filed their scheduling conference statement. *See* Doc. No. 85. In the statement, Defendants stated that they had subpoenaed Plaintiff's medical records and that Plaintiff had failed to provide initial disclosures. *Id*.

On September 5, 2017, Plaintiff filed an "Initial Disclosures and Initial Scheduling Conference Statement." *See* Doc. No. 100. Plaintiff stated that he does not have discoverable information in his possession and that he "will need to obtain *Olson*-review of his entire medical file [] and CDCR file and to employ discovery procedures and may require administrative appeals and/or litigation to actually obtain possession of these items."[2] *Id.* at 2. Plaintiff further stated that Defendants are already in possession of most or all of the information because they subpoenaed his entire medical file. Plaintiff requested that Defendants send him a copy of these documents to expedite this case because "Olsen [sic] reviews can be met with resistance . . . and can be time consumeing [sic]." *Id*. at 3.

The Magistrate Judge elected to hold an initial scheduling conference on December 11, 2017. Plaintiff appeared *pro se* and Defendants appeared through counsel. *See* Doc. No. 112. During the Conference, and with the benefit of scheduling conference statements provided by the parties, the Magistrate Judge and the parties discussed, *inter alia*, Defendants' possession of Plaintiff's Medical Records.

After the scheduling conference, the Magistrate Judge issued a "Discovery Order Following Initial Scheduling Conference" (the "Order"). Doc. No. 111. This Order provides:

---

[2] An "*Olson* review" is an administrative process that provides prisoners with access to nonconfidential information in their central files and medical records. *See* 15 C.C.R. § 3450 ("Personal Information Record Access and Amendment"); *Olson v. Pope,* 37 Cal. App. 3d 783 (1974).

2

> [I]n an effort to secure the just, speedy, and inexpensive disposition of this action, and after consideration of Federal Rule of Civil Procedure 26(b)(1), IT IS ORDERED that:
> 1. Each party has until January 12, 2018, to:
>    a. Provide the opposing party with copies of all documents currently in their possession related to any administrative grievances dated from 2010 until the present concerning Plaintiff's medical care at Kern Valley State Prison; and
>    b. Provide the opposing party with copies of all documents in their possession related to Plaintiff's medical file, care, or medication.
> 2. Additionally, if the parties obtain additional documents falling within these categories, they shall supplement their production promptly following such search. Parties do not have to re-produce documents they have already produced . . . .

The Magistrate Judge further noted:

> At the scheduling conference, Defendants argued that they should not be compelled to provide Plaintiff with the medical records Defendants have obtained via third party subpoena unless Plaintiff pays for copy costs. In light of Plaintiff's *in forma pauperis* status, such a requirement could very well mean that Plaintiff would not obtain his own medical records in his case, while Defendants have and may use them in their defense. The Federal Rules do not specify who pays for copy costs where a party has obtained documents via third party subpoena. When responding to discovery responses generally, the Supreme Court has referred to the practice where a responding party bears their own costs of production, subject to court order shifting costs. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) ("Once again, a rough analogy might usefully be drawn to practice under the discovery rules. Under those rules, the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from "undue burden or expense" in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery."). Based on this Court's review of case law, it appears that courts allocate such costs among the parties on a case-by-case basis in their discretion. In this circumstance, the Court will require Defendants to provide copies of the medical documents they obtained through third party subpoena without Plaintiff paying the copy costs.

On December 18, 2017, Defendants filed the instant Rule 72(a) objections to the Order, contending the command directing them to incur expenses on behalf of Plaintiff is clearly erroneous and contrary to law. *See* Doc. No. 117.

**STANDARD OF REVIEW**

A district court may refer pretrial issues to a magistrate judge under 28 U.S.C. §

636(b)(1). *See also* Local Rule 303(c). If a party objects to a non-dispositive pretrial ruling by a magistrate judge, the district court will review or reconsider the ruling under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 626(b)(1)(A); Fed. R. Civ. P. 72(a); Local Rule 303(f); *Grimes v. City of San Francisco*, 951 F.2d 236, 240-41 (9th Cir. 1991).

A magistrate judge's factual findings or discretionary decisions are "clearly erroneous" when the district court is left with the definite and firm conviction that a mistake has been committed. *Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997); *McAdam v. State Nat'l Ins. Co.*, 15 F.Supp.3d 1009, 1013 (S.D. Cal. 2014); *Avalos v. Foster Poultry Farms*, 798 F.Supp.2d 1156, 1160 (E.D. Cal. 2011). This standard is significantly deferential. *Id.* The district court "may not simply substitute its judgment for that of the deciding court." *Grimes*, 951 F.2d at 241; *Avalos*, 798 F.Supp.2d at 1160.

"An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* In contrast to the "clearly erroneous" standard, the "contrary to law" standard allows independent plenary review of purely legal determinations by the magistrate judge. *See Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3rd Cir.1992); *Avalos*, 798 F.Supp.2d at 1160; *Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1110-11 (E.D. Cal. 2011); *cf. U.S. v. Abonce-Barrera*, 257 F.3d 959, 968-69 (9th Cir. 2001) ("[T]he Magistrates Act's specification that nondispositive matters are to be reviewed by the district court under a far more deferential standard—'clearly erroneous' and 'contrary to law'—than dispositive matters indicates that decisions by the magistrate judge on nondispositive matters are essentially final decisions of the district court which may be appealed in due course with other issues.").

## DISCUSSION

### *Defendant's Argument*

The core of Defendants' objections concerns a court's authority to order them to incur costs on behalf of Plaintiff. Defendants' contend Plaintiff has the ability to obtain the Medical Records by making a request for an *Olson*-review, therefore the documents are equally available and not discoverable from Defendants. Further, Defendants maintain that even if the Medical Records are not equally available, the $334.95 cost to comply with the Order is unduly

4

burdensome and substantial—in view of the volume of inmate litigation handled by the California Department of Corrections and Rehabilitation and the Office of the Attorney General—and neither the Federal Rules of Civil Procedure nor case law allows a court force a party to "finance" the opposing party's litigation.

*Analysis*

The rationale permeating the Magistrate Judge's Order is to facilitate the "just, speedy, and inexpensive disposition of the action," which reached the initial disclosures stage nearly six years after Plaintiff filed his initial complaint. Rule 16(c)(2)(P). Under Rule 16, "[a]t any pretrial conference, the court may consider and take appropriate action on the following matters: . . . controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37." Rule 16(c)(2)(F).

Under Rule 26, parties may obtain as a part of the initial disclosure process "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control." Rule 26(a)(1)(A)(ii).[3] In defining the scope of discoverable information, the court is to consider:

> . . . the importance of the issues at stake in the action, the amount in controversy, *the parties' relative access to relevant information*, *the parties' resources*, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26(b)(1) (emphasis added); *Lanier v. San Joaquin Valley Officials Ass'n*, 2016 U.S. Dist. LEXIS 124400, *9 (C.D. Cal. Sept 13, 2016)) (discussing various contexts where "the parties' relative access to relevant information" crafts the scope of discovery); *Ashmore v. Allied Energy, Inc.*, 2016 U.S. Dist. LEXIS 8012, *7-8 (D.S.C. Jan 25, 2016) ("The [1983] Advisory Committee Notes [to Rule 26(b)(2)] expressly state that judges may take into account financially 'weak' litigants when issuing discovery orders."). However, the court "must limit discovery *if it determines* that the discovery sought . . . can be obtained from some other source that is *more*

---

[3] While *pro se* actions brought by prisoners are exempt from initial disclosure, nothing in the rules prohibits the court from ordering parties to exchange this initial-disclosure information under Rule 16. *See* Rule 26, 2000 Advisory Comm. Note; *Meneweather v. Powell*, 2011 U.S. Dist. LEXIS 143292, *4 (N.D. Cal. Dec 13, 2011).

*convenient, less burdensome, or less expensive . . . .*" Rule 26(b)(2)(C)(i) (emphasis added).

In terms of the cost of discovery, the U.S. Supreme Court has stated "the presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). However, the Court also noted a party "may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so." *Id.*; *Penk v. Oregon State Bd. of Higher Educ.*, 816 F.2d 458, 468 (9th Cir. 1987) (shifting of discovery costs under Rule 26(c)(2) is at court's discretion, per *Oppenheimer*, and reviewed for abuse of discretion); *see also, e.g., Caruso v. Coleman*, 157 F.R.D. 344, 349 (E.D. Pa. 1994) ("[W]hen the volume of material sought would make copying and transporting burdensome and oppressive to the producing party . . . the court may decline to order production and may instead order that the requesting party inspect the documents at the convenience of the party in possession of the documents."); *Clever View Invs. v. Oshatz*, 233 F.R.D. 393 (S.D.N.Y. 2006) (the party moving for a cost-shifting order bears the burden of proof to show good cause for shifting the cost to the requesting party"); *Delozier v. First Nat'l Bank*, 109 F.R.D. 161 (E.D. Tenn. 1986) (weighing the facts of the particular case to determine good cause in cost-shifting question). This principle from *Oppenheimer* is further buffeted by the Advisory Notes to the 2015 Rule 26 Amendment:

> Rule 26(c)(1)(B) is amended to include an express recognition of protective orders that allocate expenses for disclosure or discovery. *Authority to enter such orders is included in the present rule, and courts already exercise this authority*. Explicit recognition will forestall the temptation some parties may feel to contest this authority. Recognizing the authority does not imply that cost-shifting should become a common practice. **Courts and parties should continue to assume that a responding party ordinarily bears the costs of responding**.

(emphasis added). Thus, the court may consider shifting the cost of production to the requesting party when the burden is "undue"—but is not required to do so when the burden is not.

This Court has found a wide variety of cases with differing results applying this "undue burden or expense" standard. Some courts have relied on Rules 30-34 to determine that if discoverable information is "equally available to both parties, the party seeking the information should do his own research." *See Rodgers v. Martin*, 2014 WL 4344499, at *7 (E.D. Cal. Aug.

6

29, 2014) (where deposition testimony was equally available to plaintiff, production not ordered); *Jones v. Lundy*, 2007 WL 214580, at *1 (E.D. Cal. Jan. 25, 2007) (facts of the case do not indicate why plaintiff should "obtain free copies of documents equally available to him"); *In re Greene*, 1989 U.S. Dist. LEXIS 8691, *22 (S.D.N.Y. 1989) (rejecting application for new trial based on party's refusal to respond to interrogatories because the information was "equally available" to the other party); *Securities & Exchange Com. v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973) (no cost-shifting granted where "the transcript of this public hearing is equally available to all parties on payment of the lawfully prescribed costs."). However, other courts have determined that, for example, information may not be "equally available" to the parties, and so the responding party must provide copies to the requesting party under Rule 26 and 34. *See Braham v. Perelmuter*, 2016 U.S. Dist. LEXIS 44476, *8, (D. Conn. Apr. 1, 2016) (documents not equally accessible where plaintiff's contended his ability to access document was severely hampered by procedures, a contention defendants did not dispute); *Jacobs v. Quinones*, 2015 WL 3705218, at *7 (E.D. Cal. June 12, 2015) (documents were not "equally available" to the plaintiff due to his restrictive housing conditions, and documents were critical to resolution of his case, so defendants must produce copies of documents); *Hill v. Gonzalez*, 2015 WL 1657781, at *6 (E.D. Cal. Apr. 14, 2015) ("defendants must produce documents that are in their possession, custody, or control, even when equally available to plaintiff, unless defendants make a showing that doing so is unduly burdensome."). Thus, the Court gleans from these cases is the appropriate analysis is to be fact-intensive and reflective of the needs of the particular case.

      Here, nearly six years after Plaintiff filed his initial complaint, and after the Defendants subpoenaed Plaintiff's Medical Records from a third party, the Magistrate Judge held an initial scheduling conference. Afterwards, the court ordered the parties to "[p]rovide the opposing party with copies of all documents in their possession related to Plaintiff's medical file, care, or medication." *See* Doc. No. 111, p. 2. The facts plainly indicate that Defendants possess copies of Plaintiff's Medical Records, while Plaintiff does not, and the Rules permit this exchange. *Thomas v. Hickman*, 2007 U.S. Dist. LEXIS 95796 *54-55 (E.D. Cal. Dec 6, 2007); (production

7

not burdensome where the defendants showed neither that the documents were available to the plaintiff, nor that "the burden or expense of producing the documents outweighs the need for them or their likely benefit.").

Defendants argue that these documents are equally available to Plaintiff via *Olson*-review, and so if Plaintiff wishes to obtain a copy, he should make use of the administrative procedure. However, in his "Initial Scheduling Conference Statement," Plaintiff contended that while *Olson*-review was indeed available, the process "may require administrative appeals and/or litigation to actually obtain possession of these items." *See* Doc. No. 100 at *2. Plaintiff instead requested Defendants send him a copy of the documents "to greatly expedite this case [because] *Olson* reviews can be met with resistance . . . and can be time consumeing [sic]." *Id*. at 3. Defendants have not rebutted these assertions. *See, e.g., Braham v. Perelmuter*, 2016 U.S. Dist. LEXIS 44476 (lack of rebuttal to the plaintiff's argument—that administrative procedure was overly burdensome and therefore "not available—supported compelling disclosure of documents). In ordering Defendants to turn over these documents, the Magistrate Judge appears to have found *Olson*-review to be less convenient, more burdensome or more expensive than simply requiring Defendants to produce the documents in this case.[4] Given that Defendants currently possess the Medical Records and are proceeding with the defense of their case,[5] Plaintiff's indigent and *pro se* status would cause delays in any *Olson*-review, and most importantly, the fact that *initial disclosures* were not ordered until nearly six-years after Plaintiff filed his initial petition, this Court cannot find the Magistrate Judge's Order was unreasonable,

---

[4] The Court finds support for Plaintiff's assertions, such that it is clear the Magistrate Judge has not relied solely upon conclusory or self-serving averments from the Plaintiff. It appears if Plaintiff were to undertake *Olson*-review, he will be able to inspect his medical records and file, but may have to pay for copies. *See* Operations Manual for California Dept. of Corrections and Rehabilitation, § 13030.26.3 "Copies of Records" (Jan 31, 2016) (copies provided "[u]pon a showing of a reasonable need to have a copy of a document, and upon payment of ten (10) cents per copied page . . . ."). If this were true, Plaintiff would most certainly face an extended delay in obtaining his records, due to his indigent status. However, Regulations also provide that an indigent inmate *may* qualify for free copies of a legal document over 50 pages "when accompanied by a reasonable written explanation of the need." Id. at §101120.15; *see also* 15 CCR § 3162. The plain text of the indigent regulations indicate Plaintiff may indeed have to undergo a potentially lengthy process before he could obtain all 1500 pages of his file. In either situation, these regulations support the Magistrate Judge's conclusion that, "[i]n light of Plaintiff's *in forma pauperis* status[, this] could very well mean that Plaintiff would not obtain his own medical records in his case, while Defendants have and may use them in their defense." *See* Doc. No. 111 at *2, fn. 4.

[5] See Doc. No 118 (Defendants' "Motion to Compel" responses to interrogatories and request for production, and Doc. No. 119 (Defendants' "Motion for Summary Judgment"), filed February 5, 2018.

8

much less "clearly erroneous" or "contrary to law," especially in light of the decision to seek a "just and speedy resolution" to this case. See Rule 16(c)(2)(P).

Defendants' main contention is that it is unduly burdensome for the State to be required to pay for the cost of every inmate plaintiff in view of the volume of inmate litigation handled by the California Department of Corrections and Rehabilitation and the Office of the Attorney General. The Court is cognizant of Defendants' concern, but finds it unavailing given the case-by-case standard set by the Federal Rules, *Oppenheimer* and its progeny. In general, litigants should follow the prescribed administrative procedures to obtain documents, which in California includes utilizing the *Olson*-review procedures, and as the above-collected cases indicate, determinations as to cost-shifting will be made on a case-by-case basis.

**CONCLUSION**

Under the facts of this case, the Court finds the Magistrate Judge was within her authority to order each party to "[p]rovide the opposing party with copies of all documents in their possession related to Plaintiff's medical file, care, or medication," and directing Defendants to provide copies of the documents in their possession at Defendant's expense. The Magistrate Judge's Order is supported by the Federal Rules of Civil Procedure, Advisory Committee Notes, and case law interpreting those rules. Accordingly, The Magistrate Judge's Order is not clearly erroneous or contrary to law, and so Defendant's objections are overruled.

**ORDER**

For these reasons, IT IS ORDERED that:

1. The Defendants' objections, (ECF No. 117), are OVERRULED; and
2. Each party has until February 20, 2018 to comply with the December 12, 2017 discovery order, (ECF No. 111).

IT IS SO ORDERED.

Dated: February 6, 2018

_____
SENIOR DISTRICT JUDGE